IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


Sarah Lynn Holbrooks, Executor of
The Estate of Howard Holbrooks,
Deceased,

    Plaintiff,


   vs.        Case No. 11-1383-JTM


Sun Life Assurance Company of Canada,
     Defendant.



MEMORANDUM AND ORDER

  This is an Employee Retirement Income Security Act (ERISA), 45 U.S.C. § 1001 *et
seq.*, action by plaintiff Sarah Lynn Holbrooks, as executor for the Estate of Dr. Howard
Holbrooks. The plaintiff challenges the decision of the defendant Sun Life Assurance
Company to offset Veterans Administration disability benefits from the disability benefits
paid to Dr. Holbrooks during his lifetime under an ERISA employer-sponsored plan. Both
parties have moved for summary judgment. In addition, the defendant has moved for leave
to file a surreply. The plaintiff has filed no opposition to the request, which is accordingly
granted as unopposed pursuant to D.Kan.R. 7.4. The court has reviewed the facts and
arguments of the parties, and finds that the VA disability benefits were properly offset
under either of two separate Plan provisions.

  Summary judgment is proper where the pleadings, depositions, answers to
interrogatories, and admissions on file, together with affidavits, if any, show there is no
genuine issue as to any material fact, and that the moving party is entitled to judgment as
a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the
court must examine all evidence in a light most favorable to the opposing party. *McKenzie*

*v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

*Findings of Fact*

Dr. Holbrooks was a Board Certified Anesthesiologist. He was also a six-year veteran of the United States Army, and was honorably discharged on July 1, 2003 at the rank of major.

Dr. Holbrooks participated in an employee welfare benefit plan sponsored by his former employer, Community Health Systems. The benefits of the Plan were funded, at

least in part, by a group disability insurance policy issued by Sun Life to the employer.

On May 7, 2009, Dr. Holbrooks was diagnosed with Amyotrophic Lateral Sclerosis (ALS). As a result of the ALS, Dr. Holbrooks became entitled to receive disability benefits under the Policy, effective August 25, 2009, until his death on February 7, 2013. Under the Sun Life Policy, Dr. Holbrooks would receive as disability benefits 60% of his total monthly earnings, up to a maximum of $15,000 per month, less any "Other Income Benefits."

He also became entitled to receive service-connected disability benefits from the Department of Veterans Affairs in the amount of $3,005 per month, effective September 23, 2008. The regulations of the Department of Veterans Affairs, 38 C.F.R. §3.318, pursuant to 38 U.S.C. §§ 101 et seq. (Veteran's Benefits), establish a presumption of service connection for ALS for any veteran who develops ALS any time after separation from military service. These VA disability benefits accrue as a tax-free benefit paid to veterans for disabilities that are a result of, or made worse by, injuries or diseases that occurred while on active duty, active duty for training, or inactive duty training.[1]

The Sun Life Policy provides:

> Other Income Benefits are those benefits provided or available to the Employee while a Long Term Disability Benefit is payable. These Other Income Benefits, other than retirement benefits, must be provided as a result of the same Total or Partial Disability payable under this Policy. Other Income Benefits include:
>
> 1. The amount the Employee is eligible for under:
>
>     a. Workers' Compensation Law; or
>     b. Occupational Disease Law; or
>     c. Unemployment Compensation Law; or
>     d. Compulsory Benefit Act or Law; or
>     e. an automobile no-fault insurance plan; or
>     f. any other act or law of like intent . . .
>
> 6. The disability or retirement benefits under the United States Social Security Act, or any similar plan or act....

---

[1] The regulation was adopted after a 2005 National Academy of Sciences Institute of Medicine study found that veterans face a statistically significant greater risk of developing ALS.

Sun Life determined that the VA Benefits were "Other Income Benefits" under Paragraphs 1(d) as arising under "Compulsory Benefit Act or Law," and 1 (f) as under "any other act or law of like intent." It then offset the VA benefits against the maximum monthly Policy amount of $15,000. Sun Life notified Dr. Holbrooks of its decision on December 17, 2009. Dr. Holbrooks appealed from this decision, which Sun Life affirmed by a letter dated September 10, 2010. As a result, Dr. Holbrooks received $11,995 per month (pro-rated during the initial and terminal months of effective coverage) from Sun Life every month between August 25, 2009 and Dr. Holbrooks' death on February 7, 2013.

### Conclusions of Law

The parties do not dispute the essential facts, and essentially concur as to the standard of review. The court reviews de novo the decision of the defendant to offset the VA disability benefits. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 112-13 (1989). In conducting this review, the court construes the Plan by standard rules of contract interpretation, which has as its goal the determination of the intent of the parties. *Capital Cities/ABC, Inc., v. Ratliff*, 141 F.3d 1405 1411 (10th Cir. 1998). Accordingly, the court construes the Plan in light of all of its provisions, giving the language used its common and ordinary meaning. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996); *Blair v. Metro. Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir.1992

Two Plan provisions are at issue here. The court finds first that the VA disability benefits are "Other Income Benefits" under the policy, because they are disability benefits arising under a "Compulsory Benefit Act or Law." The facts establish that the same underlying physical condition, ALS, is the foundation for both the claim for benefits under the Sun Life Plan and the VA benefits. There is no question but that the VA benefits are "compulsory" in the sense that the VA was "required" by law to provide them. *See* American Heritage Dict. of the Eng. Lang., 274 (New College Ed. 1978). "Veteran's

disability benefits are nondiscretionary, statutorily mandated benefits." *Cushman v. Shinseki*, 576 F.3d 1290, 1297 (Fed. Cir. 2009). As noted earlier, VA regulations explicitly provide that veterans who develop ALS are guaranteed disability benefits.

Notably, the plaintiff makes no attempt to respond to the *merits* of Sun Life's argument that the VA benefits fall within the scope of the "Compulsory Benefit" clause contained in Paragraph 1(d). Rather, the plaintiff asserts that Sun Life has waived the issue, claiming that the defendant has not previously cited this clause, and has relied instead solely on the catch-all language in Paragraph 1(f).

This argument of waiver fails in the light of the factual record. In addition to the catch-all clause, Sun Life explicitly invoked the "Compulsory Benefit Act or Law" language in its December 17, 2009 letter denying Dr. Holbrooks' claim. The defendant wrote: "As discussed today, the [VA disability benefits] award is considered an Other Income Benefit as defined above under a 'Compulsory Benefit Act or Law'; and/or any other act or law of like intent."

Nor is plaintiff's waiver argument tenable in light of the pleadings in the action. During discovery, Sun Life repeatedly cited the "Compulsory Benefit" clause as one of the reasons for its decision. In addition, the Pretrial Order explicitly stipulates that the Policy's "Other Income" provision includes an exclusion for benefits arising under any "Compulsory Benefit Act or Law," (Dkt. 51, at 3), and further acknowledges that Sun Life contends that the VA benefits "constituted one or more categories of 'Other Income Benefits' under the Policy. (*Id*. at 7).

Because Sun Life gave Dr. Holbrooks "specific reasons [for] denying [his] claim," the plaintiff's waiver argument lacks merit. *See Spradley v. Owens-Illinois*, 686 F.3d 1135, 1040 (10th Cir. 2012). If Sun Life did not address the issue in later communications, it was because Dr. Holbrooks failed to mention the clause in his administrative appeal. That is, the appeal only complained of Sun Life's reliance on the catch-all provision. To the extent

that any party waived the application of the "Compulsory Benefit" clause, it was the plaintiff rather than the defendant.

Finally, even if Sun Life had failed to mention the "Compulsory Benefit" clause in its letter to Dr. Holbrooks, the plaintiff's waiver argument would still not preclude the court from addressing the issue here. *Spradley* recognized that, when reviewing a plan administrator's decision to deny benefits under the arbitrary and capricious standard, the administrator cannot rely on *post hoc* rationales. 686 F.3d at 1140-41. But, as noted earlier, in the present case the decision of the administrator is reviewed *de novo*. Accordingly, the court's task is to determine whether the denial of benefits was correct, and "it is entirely proper ... to consider policy provisions [that] clearly may ... be a basis for such a denial even if those provisions were not specified ... as the basis of denial of coverage." *Weber v. St. Louis University*, 6 F.3d 558, 560 (8th Cir. 1993) (internal quotation omitted).

In sum, the issue of the "Compulsory Benefit" is squarely before the court. By failing to address the issue on the merits, the plaintiff has effectively conceded it. *Eddy's Toyota of Wichita v. Kmart*, 945 F.Supp. 220, 224 (D. Kan. 1996).

Alternatively, the court finds that the VA disability benefits are also subject to offset under the Policy's exclusion of "Other Income Benefits." Under Paragraphs 1(a) and 1(f), the Plan includes as "Other Income" any benefits which arise under "Workers Compensation Law" or legislation "of like intent."

Courts have recognized that workers compensation laws serve to two purposes: establishing a remedy for injured workers which is both "expeditious and independent of proof of fault," while providing employers liability which is "limited and determinate." *Bradford Elec. Light Co. v. Clapper*, 286 U.S. 145, 159 (1932). *See In re McAllister Towing & Transp.*, 432 F.3d 216, 225 (3rd Cir. 2005) (noting that "[l]ike other workers' compensation schemes," the Federal Employee Compensation Act "serves a dual purpose" as articulated in *Bradford*). *See also, e.g., Price v. Western Resources*, 232 F.3d 779, 789 (10th Cir. 2009) (in

Kansas workers compensation statute, while "the legislature sought to protect workers by imposing blanket liability for injuries they sustained on the job, it also sought to be fair to employers"); *Elliot v. Turner Constr.*, 381 F.3d 995, 1001 (10th Cir. 2004) ("primary purpose" of Colorado workers compensation law was to give remedy for job-related injuries, regardless of fault); *Chriestenson v. Russell Stover Candies*, 46 Kan.App.2d 453, 263 P.3d 821, 825 (2011) (Kansas law was "enacted to award disability benefits to employees for damages resulting from injuries received at the workplace").

This dual purpose underlying workers compensation statutes is closely aligned to the intent underlying the Veteran's Benefit Act, as the United States Supreme Court recognized in *Stencel Aero Engineering v. United States*, 431 U.S. 666 (1977). In that case, the Court held that the doctrine articulated in *Feres v. United States*, 340 U.S. 135 (1950), which precludes civil actions for injuries suffered by active-duty service personnel, also applied to actions against government contractors. In reaching its conclusion, the Court observed that under *Feres*, "the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government." 431 U.S. at 671. Consequently, the court concluded:

> A compensation scheme such as the Veterans' Benefits Act serves a dual purpose: it not only provides a swift, efficient remedy for the injured serviceman, but it also clothes the Government in the protective mantle of the Act's limitation-of-liability provisions. Given the broad exposure of the Government, and the great variability in the potentially applicable tort law, the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries. To permit petitioner's claim would circumvent this limitation, thereby frustrating one of the essential features of the Veterans' Benefits Act.

*Id.* at 673-74 (internal quotations and citations omitted).

That the United States considers VA disability benefits similar to workers compensation benefits is exemplified in 38 C.F.R. § 3.708(b)(1), which provides that when a person is entitled to federal civilian workers compensation disability benefits and VA

benefits "for the same disability," that person must "elect which benefit he or she will receive."

In her summary judgment motion and in response to Sun Life's motion, the plaintiff relies on a trio of cases. The plaintiff first analogizes the present case to *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 667 (Tex. 1987), where the court held that the policy at issue did not authorize the offset of VA benefits from a long-term disability plan. Contrary to the plaintiff's argument, however, the policy language at issue in *Barnett* was markedly dissimilar to that in the Sun Life Policy now in question. That is, in *Barnett* the policy provided for an offset of "Benefits under the Federal Social Security Act [SSA], Railroad Retirement Act [RRA], or any similar act of any national government or any federal, state, provincial, municipal or other governmental agency." 723 S.W.2d at 665. The Texas Supreme Court held that VA benefits, based as they are on service in the military, are not "similar" to the earned property rights generated through employment and thus protected by the SSA or RRA. *Id*. at 666-67. The policy in *Barnett* simply did not include the type of broad, categorical offset for any "Compulsory Benefit Act or Law" which is present here.

The other decisions cited by plaintiff share this factual dissimilarity. *See Riley v. Sun Life and Health Insur. Co.*, 657 F.3d 739 (8th Cir. 2011); *Hannington v. Sun Life and Health Insur. Co.*, 711 F.3d 226 (1st Cir. 2013). In both *Riley* and *Hannington*, the catch-all "any other similar act or law" provision followed the explicit mention of only two specific pieces of legislation, the SSA and RRA. As *Barnett* had done a quarter century earlier, the First and Eighth Circuits found that benefits under the "VA Act" were not similar to benefits under the SSA or RRA. *See* 711 F.3d at 233-34; 657 F.3d at 742-743.

The catch-all provision in the Sun Life Policy here is not limited to the SSA or RRA. It also includes, as noted earlier, any benefits under a "Compulsory Benefit Act or Law," a provision which the plaintiff has not addressed, either in the initial 2009 appeal of Sun Life's administrative decision, or in response to Sun Life's present motion for summary

judgment. More importantly, the catch-all provision is also tied to general "Workers Compensation Law," which was never an issue in *Riley* and *Hannington*.[2] Thus, of the three cases the plaintiff relies on, two entirely fail to address whether general "similar" or "of like intent" catch-all language would apply to benefits under workers compensations statues.

Only *Barnett* squarely addresses the issue. And *Barnett* did indeed reject the insurer's argument that VA benefits were "similar" to workers compensation benefits (although it also stressed that this was "[a] much more difficult determination" than its finding that the benefits were not "similar" to benefits under the SSA or RRA). 723 S.W.2d at 667. Ultimately, the court found dissimilarity, because

> [t]he avowed purpose of workers' compensation is to compensate injured individuals for their loss of earning capacity. *It was not designed to compensate an employee for his lost earnings or for the injury itself....* This is dissimilar to the situation in VA cases....

*Id.* (emphasis added, citations omitted).

The problem is not that *Barnett* is a Texas decision interpreting Texas law. Rather, that case has little relevance here because the key rationale cited in *Barnett* was directly rejected within a few months of that decision by the United States Supreme Court in *Rose v. Rose*, 481 U.S. 619, 630 (1987). In that case, the Court observed that "Veterans' disability benefits compensate for *impaired earning capacity*." (Emphasis added).

The plaintiff also stresses that the Plan fails to explicitly state that VA disability benefits are included within the definition of "Other Income." But cases have explicitly found that VA disability benefits may be offset, even without being separately mentioned, so long as they fall within the scope of otherwise unambiguous general policy language. Thus, in *High v. E-Systems, Inc.*, 459 F.3d 573 (5th Cir. 2006), the court upheld an award of

---

[2] The Policy in *Hannington* did include a clause providing that "workers compensation" was within the definition of "Other Income" which would be offset, but that provision was not in issue because that clause lacked any "similar" catch-all provision; only the SSA-RRA clause contained such a catch-all. Thus, the defendant in that case was forced to argue that VA benefits were "similar" in nature to SSA or RRA benefits, an argument the First Circuit rejected.

summary judgment in favor of the plan administrator. The administrator there had offset the plaintiff's VA disability benefits pursuant to a broad provision authorizing a reduction for "other income benefits" including benefits "under any workmen's compensation or similar law." In reaching this conclusion, the Fifth Circuit also explicitly rejected the plaintiff's reliance on *Barnett*, concluding that

> a closer look reveals that his argument is misplaced. First, *Barnett* applies Texas insurance law, which is preempted by ERISA. Second, *Barnett* involves an insurance policy and not a self-funded ERISA plan, as in this case. Third, the language referred to by High in *Barnett* did not include an all-encompassing provision, as in the E-Systems Plan.... Therefore, High's reliance on *Barnett* is misplaced.

459 F.3d at 578.

The result is also appropriate here. The Plan here expressly includes an otherwise all-encompassing provision which provides that "Other Income" includes benefits rendered under laws which are "of like intent" to workers compensations statutes. As construed by the Supreme Court in *Stencel* and *Rose*, VA disability benefits and workers compensation laws share similar purposes in guaranteeing compensation to disabled workers regardless of fault, while simultaneously limiting the legal exposure of the employer to additional litigation.

The court finds that the VA disability benefits were properly offset as both income which was made under a "Compulsory Benefit Act," and income which was rendered under legislation "of like intent" to workers compensation laws.

IT IS ACCORDINGLY ORDERED this 31st day of October, 2013, that the defendant's Motion for Summary Judgment (Dkt. 49) is granted; the plaintiff's Motion for Summary Judgment (Dkt. 47) is denied; the defendant's Motion for Leave (Dkt. 56) is granted.

s/ J. Thomas Marten

J. THOMAS MARTEN, JUDGE